**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Glenn Kline,<br><br>     Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>     Defendant. | No. CV-14-08242-PCT-DGC<br><br>**AMENDED ORDER** |

Pursuant to Plaintiff's unopposed motion to amend (Doc. 30),

Plaintiff Robert Glenn Kline seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, which denied him disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and was based on legal error, the decision will be vacated and the matter remanded for an award of benefits.

**I.      Background.**

Plaintiff is a 53 year old male who previously worked as a recreational vehicle repairer. On March 29, 2010, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning December 2007.[1]  On January 23, 2013, he appeared with his attorney and testified at a hearing before an ALJ.

---

[1] The ALJ's opinion incorrectly stated that Plaintiff alleged disability beginning June 23, 2010, A.R. 25, which is after Plaintiff's application date.

A vocational expert also testified. On March 13, 2013, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision.

## II.     Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## III.    The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of

impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, and that he had not engaged in substantial gainful activity since his alleged onset date. A.R. 22. At step two, the ALJ found that Plaintiff had the following severe impairments: sleep apnea, degenerative disc disease of the lumbar and thoracic spine, fibromyalgia, obesity, major depressive disorder, anxiety disorder, "carpal tunnel syndrome status post release surgery," and "status post removal of hardware – right ankle." *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. A.R. 28. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform:

> light work as defined in 20 CFR 404.1567(b) except the claimant is able to occasionally balance, stoop, crouch, kneel, crawl, and climb ramps and stairs. The claimant should never operate foot controls with his right lower extremity, or be required to climb ladders, ropes, or scaffolds. The claimant should also avoid concentrated exposure to non-weather related extreme hot, extreme cold, pulmonary irritants, poorly ventilated areas, dangerous with moving mechanical parts, and exposure to unprotected heights. The claimant will also require a position having simple repetitive and routine tasks that can be learned through demonstration, without the reading of instructions.[2]

---

[2] A.R. 31.

The ALJ further found Plaintiff unable to perform any of his past relevant work. A.R. 36. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including "Photocopier Operator," "Routing Clerk," and "Router." A.R. 37.

**IV.     Analysis.**

Plaintiff argues that the ALJ's disability determination was defective for three reasons: (1) the ALJ improperly rejected the medical opinions of Plaintiff's treating physician, (2) the ALJ improperly rejected the opinion of Plaintiff's treating mental health certified physician assistant, and (3) the ALJ improperly discounted Plaintiff's testimony. The Court will address each argument below.

**A.     Opinion of Plaintiff's Treating Physician.**

Plaintiff argues that the ALJ improperly discounted the medical opinions of Dr. Henry H. Kaldenbaugh. Dr. Kaldenbaugh has been Plaintiff's treating physician for more than 20 years. A.R. 61. During the time period relevant to this case, Dr. Kaldenbaugh consulted with Plaintiff on 30 occasions concerning Plaintiff's fibromyalgia and related health issues.[3] Dr. Kaldenbaugh also prescribed several medications to treat Plaintiff's fibromyalgia and its symptoms.[4]

In December 2010, Dr. Kaldenbaugh completed a Fibromyalgia Residual Functional Capacity Questionnaire. A.R. 330-32. Dr. Kaldenbaugh indicated that Plaintiff suffered from fibromyalgia and that this condition had lasted for 12 months or could be expected to last for the next 12 months. A.R. 330. Dr. Kaldenbaugh reported that Plaintiff's signs and symptoms included multiple tender points, nonrestorative sleep, frequent severe headaches, incoordination, severe fatigue, depression, numbness and

---

[3] *See* Plaintiff Br., Doc. 19, at 13 n.13 (collecting administrative record citations documenting 30 consultations between Plaintiff and Dr. Kaldenbaugh).

[4] *See, e.g.*, A.R. 520 (prescribing Tramadol, an opioid drug used to treat chronic moderate to moderately severe pain); A.R. 281 (prescribing Savella, a drug approved by the Food and Drug Administration to treat fibromyalgia).

tingling of upper extremities, vestibular dysfunction, cognitive impairment, and low back pain. *Id.* He stated that Plaintiff experienced moderately severe pain (i.e., "[p]ain seriously affect[ing] ability to function") and severe fatigue (i.e., fatigue "which precludes ability to function"), and that these symptoms were sufficiently severe to interfere with Plaintiff's attention and concentration "daily and almost constantly." A.R. 332. Dr. Kaldenbaugh further opined that, as a result of these symptoms, Plaintiff would not be able to work on a regular and continuing basis. *Id.* Subsequently, in summarizing Plaintiff's January 22, 2013 consultation, Dr. Kaldenbaugh stated that Plaintiff "is significantly disabled due to his current diagnoses and is unable to work even part time." A.R. 958.

The Ninth Circuit has held that the uncontradicted opinion of a claimant's treating physician can be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). Even if contradicted by the opinion of another doctor, a treating physician's opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (internal citation omitted). Under the "specific and legitimate reasons" standard, an ALJ must present "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). "[T]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22.

The Court concludes that Dr. Kaldenbaugh's opinion is properly evaluated under the "clear and convincing" standard. Although the ALJ stated that Dr. Kaldenbaugh's opinion was contradicted by "the well-supported medical opinion of other sources as mentioned in this opinion," she did not explain which aspects of Dr. Kaldenbaugh's opinion were contradicted or by whom. A.R. 35. In her brief, the Commissioner asserts that Dr. Kaldenbaugh's "opinion of disability" is contradicted by Dr. Brecheisen.

Doc. 24 at 8. But Dr. Brecheisen did not contradict the pertinent aspects of Dr. Kaldenbaugh's opinion – namely, that Plaintiff experienced moderately severe pain and severe fatigue which disrupted Plaintiff's attention and concentration "daily and almost constantly." Dr. Brecheisen reported that although Plaintiff suffered from fibromyalgia, a physical examination did not reveal "any objective medical evidence of the claimant's allegation of permanent disability." A.R. 313. This statement is not inconsistent with Dr. Kaldenbaugh's conclusion that Plaintiff suffered moderately severe pain and severe fatigue as the result of his fibromyalgia. *See* SSR 12-2p, 77 Fed. Reg. 43,640, 43,643 (recognizing that "objective medical evidence" will not always substantiate the intensity and persistence of pain and other symptoms caused by fibromyalgia); *see also* 20 C.F.R. § 404.1529(c)(3) (recognizing that a claimant may suffer symptoms that "suggest a greater severity of impairment than can be shown by objective medical evidence alone").

Even if Dr. Kaldenbaugh's opinion were properly characterized as contradicted, the ALJ's rejection of the opinion would constitute reversible error because the ALJ did not provide legitimate reasons for discounting it. The ALJ offered the following rationale for her decision to accord "little weight" to Dr. Kaldenbaugh's opinion:

> [Dr. Kaldenbaugh's] opinions are based solely on the claimant's subjective pain complaint and while Dr. Kaldenbaugh has treated the claimant for his fibromyalgia pain, Dr. Kaldenbaugh is merely a primary care physician and not a rheumatologic specialist. . . . Further, while Dr. Kaldenbaugh diagnosed the claimant with fibromyalgia, upon digital palpitation, a positive pain response was listed at 8 of 18 tender point locations on December 30, 2010, the same day the opinion was completed, insufficient to warrant such a diagnosis under SSR 12-2p. . . . . Combined, as this opinion is conclusory, and unsupported by Dr. Kaldenbaugh's own treating records, as well as the well-supported medical opinion of other sources as mentioned in this opinion, little weight was afforded to the medical source opinion offered by Dr. Kaldenbaugh and only [to] the extent it is consistent with the above analysis.[5]

The ALJ's assertions that Dr. Kaldenbaugh's opinion was "conclusory," "unsupported by Dr. Kaldenbaugh's own treating records," and based "solely on the

---

[5] A.R. 35.

- 6 -

claimant's subjective pain complaint" are not supported by the record, which shows that Dr. Kaldenbaugh made a variety of objective findings consistent with his assessment of Plaintiff's limitations.[6] The ALJ's assertion that Dr. Kaldenbaugh's digital palpitation is insufficient to warrant a fibromyalgia diagnosis under SSR 12-2p (the Social Security Administration's Policy Interpretation Ruling on Evaluation of Fibromyalgia) is both incorrect and irrelevant. It is incorrect because SSR 12-2p does not require any positive tender point findings where the patient has a history of widespread pain and repeated manifestations of six or more fibromyalgia symptoms not attributable to another malady. *See* 77 Fed. Reg. at 43,642. It is irrelevant because the ALJ does not dispute that Plaintiff suffers from fibromyalgia. A rheumatologist, Dr. Ken Epstein, diagnosed Plaintiff with Fibromyalgia, A.R. 259, 261-63, and the ALJ herself found that Plaintiff suffers from fibromyalgia, A.R. 27. Finally, the fact that Dr. Kaldenbaugh is not a rheumatologist is also irrelevant. Neither the ALJ nor the Commissioner suggests that a rheumatologic specialization is necessary to treat and evaluate the severity of Plaintiff's pain and fatigue.

Because the ALJ failed to provide legitimate reasons for rejecting Dr. Kaldenbaugh's opinion, let alone clear and convincing ones, the Commissioner's decision must be vacated.[7]

---

[6] *See, e.g.*, A.R. 334 (describing digital palpitation, which elicited pain from eight tender point sites); A.R. 280 (noting that patient was "moving slowly due to lower back pain and unable to squat due to quadriceps femoris weakness"); A.R. 352 (reporting that "[p]atient fell in home several days ago hitting knees"); A.R. 360 (patient appears "moderately uncomfortable" and "depressed"); A.R. 362 (reporting that Plaintiff "has fallen several times during the past week and feels dizzy with standing. Was bedridden for three days.").

[7] Although the ALJ's failure to credit Dr. Kaldenbaugh's medical opinion is dispositive, the Court will proceed to the remaining issues in this case in the interest of judicial economy.

**B.     Opinion of Plaintiff's Treating Physician Assistant.**

Plaintiff's second contention is that the ALJ improperly discounted the medical opinion of Robert F. Nordman, PAC, who treated Plaintiff's depression during the time period relevant to this case.[8]

Physician assistants are not considered "acceptable medical sources" for purposes of documenting a medical impairment. 20 C.F.R. § 404.1513(a). They are, however, considered "other sources" the Commissioner may rely on to show the severity of a claimant's impairments and how those impairments may affect her ability to work. § 404.1513(d)(1). The ALJ may discount a physician assistant's opinion by giving "germane reasons" for doing so that are "substantiated by the record." *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Under this standard, the ALJ may discount a physician assistant's opinion if, for example, it is conclusory (e.g., expressed in a standardized check-the-box form that fails to provide supporting reasons or clinical findings), inconsistent with the physician assistant's treatment records, or inconsistent with other objective medical evidence in the record. *See id.*; *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

PAC Nordman provided Plaintiff with mental health care from October 2011 through at least December 2012. *See, e.g.*, A.R. 803 (Oct. 4, 2011); A.R. 598 (Dec. 13, 2012). During this time, Nordman prescribed a number of medications to treat depression. *See, e.g.*, A.R. 803 (prescribing Remeron and Wellbutrin). In December 2012, Nordman completed a check-the-box questionnaire assessing Plaintiff's ability to perform work-related activity. *See* A.R. 592-93. Nordman indicated that Plaintiff's psychiatric status imposed a variety of "severe" and "moderately severe" limitations on his ability to carry out work on a sustained basis in a routine work setting. *See id.* For example, Nordman reported that Plaintiff's condition had caused a severe deterioration in Plaintiff's personal habits, and would severely limit his ability to perform simple and

---

[8] Although Nordman's evaluation appears to be cosigned by Dr. Dan Graber, Plaintiff does not dispute that the evaluation is properly attributed to Nordman. *See* Doc. 19 at 12 n.12.

repetitive tasks on a sustained basis. *See id.* Nordman included a handwritten note on the questionnaire stating that Plaintiff "relies heavily on his spouse for app[ointments], remember [sic] things, etc. Unlikely [Plaintiff] will be able to work again." *Id.*

The ALJ determined that Nordman was not an acceptable medical source and concluded that his opinion should be discounted because the "extreme set of limitations" identified in his opinion was "not supported by the medical evidence offered by the claimant." A.R. 31. This was a germane reason for discounting Nordman's conclusions. *See Bayliss*, 427 F.3d at 1218 (conflict between objective medical evidence and a lay person's opinion is a germane reason for discounting that opinion). The record confirms that at least some of Nordman's findings were inconsistent with the objective medical evidence. *See, e.g.*, A.R. 310-11 (opinion of Dr. Mark Brecheisen, concluding Plaintiff suffers from "mild depression" and "is able to perform basic activities of daily living such as personal grooming and hygiene"). The Court concludes that the ALJ did not err in discounting Nordman's opinion.

### C. Plaintiff's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Second, if the Plaintiff has made such a showing and there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Id.*

Plaintiff testified that he stopped working due to pain and frequent falls. A.R. 50. He stated: "I can't sit down a long time without a lot of pain. And I can't stand very long. I have to be able to stand, sit, and lay. And there's no job that'll let me lay down that I know of." A.R. 51. He testified that he fell "a couple times a week." A.R. 52. He

further testified that he was struggling with severe depression associated with his chronic pain. A.R. 59.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause these symptoms, but concluded that Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not fully credible. A.R. 32. The ALJ gave three reasons for this conclusion. First, the Plaintiff's testimony was not fully supported by objective medical evidence. A.R. 33. Second, Plaintiff's testimony was undermined by his failure to pursue follow-up rheumatologic care. A.R. 34. Third, Plaintiff's testimony was undermined by his failure to start exercising or quit smoking and by his testimony that he maintained a woodworking hobby as a stress reliever and held yard sales at his home. *Id.* The Court concludes that these do not constitute clear and convincing reasons for rejecting Plaintiff's testimony.

Plaintiff's inability to point to objective medical evidence substantiating the intensity of the pain and fatigue caused by his fibromyalgia is unremarkable, and does not constitute grounds for discounting Plaintiff's testimony. SSR 12-2p specifically contemplates that there will be cases where "objective medical evidence does not substantiate a person's statements about the intensity, persistence, and functionally limiting effects" of his or her fibromyalgia symptoms, and instructs the ALJ to look beyond the medical evidence to determine whether the claimant's complaint is reliable in such a case. 77 Fed. Reg. 43,640, 43,643. *See also Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817-18 (6th Cir. 1988) (noting that physical examinations of patients with fibromyalgia "will usually yield normal results – a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions.").

The ALJ's second reason – that Plaintiff did not pursue follow-up rheumatologic care after being diagnosed by Dr. Epstein in 2010 – is not a clear and convincing reason for discounting Plaintiff's testimony. The Commissioner is correct that the amount of treatment "is an important indicator of the intensity and persistence of [Plaintiff's]

symptoms." Doc. 24 at 13 (citing 20 C.F.R. § 404.1529(c)(3)). But the record indicates that Plaintiff's sought extensive treatment for fibromyalgia and was prescribed several medications for this condition and its symptoms. *See, e.g.*, A.R. 281 (prescribing Savella to treat fibromyalgia). Plaintiff received this treatment from his general practice physician and not a rheumatologist, but the ALJ fails to explain why that fact detracts from Plaintiff's credibility.

The ALJ's third reason – that Plaintiff's other activities undermine his credibility – also misses the mark. Although the Court absolutely agrees with the ALJ's apparent view that quitting smoking and taking up exercise would improve Plaintiff's condition, his failure to do so does not show that his testimony about pain and fatigue is suspect. Making these lifestyle changes can be difficult for someone in good health; they are even more challenging for a person suffering from sleep apnea, degenerative disc disease, fibromyalgia, obesity, major depressive disorder, anxiety disorder, carpal tunnel syndrome, and complications related to ankle surgery. Plaintiff's failure to take these clearly beneficial steps does not constitute a clear and convincing reason for concluding that he was being untruthful about his pain and fatigue.

Nor does Plaintiff's participation in woodworking and yard sales amount to a clear and convincing reason to conclude that he was being untruthful. The ALJ did not find that Plaintiff engaged in these activities on a regular basis or for a significant part of the day, and the record indicates that Plaintiff spent far less time on these activities than would be required to complete a typical work shift. *See, e.g.*, A.R. 52-53 (Plaintiff engaged in woodworking for "a half an hour every time, not [an] everyday-type [of] thing"). Nor did the Commissioner find that Plaintiff's alleged symptoms would have precluded him from engaging in these activities on a limited basis.

The Court concludes that the ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony about the severity of his symptoms. *Vasquez*, 572 F.3d at 591.

## V. Remedy.

Where an ALJ fails to provide adequate reasons for rejecting evidence of a claimant's disability, the Court must credit that evidence as true. *Lester*, 81 F.3d at 834. An action should be remanded for an immediate award of benefits when the following factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) the ALJ would be required to find the claimant disabled if the improperly discredited evidence were credited as true. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (internal citations omitted). There is "flexibility" which allows "courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1020.

The relevant factors require the Court to remand for an award of benefits. The ALJ failed to provide a legally sufficient reason for rejecting Dr. Kaldenbaugh's medical opinion, and this opinion, if credited as true, would require the ALJ to enter an award of benefits. *See* A.R. 70 (testimony of Social Security Administration's vocational expert, concluding that Plaintiff would be precluded from doing any work if he suffered from the limitations described in Dr. Kaldenbaugh's medical opinion). The ALJ likewise failed to provide a legally sufficient reason for rejecting Plaintiff's symptom testimony, and this testimony, if credited as true, would also require the ALJ to enter an award of benefits. Finally, the Court's independent evaluation of the record as a whole does not reveal any substantial grounds for doubting that the claimant is disabled. Therefore, the Court concludes that remand for an award of benefits is the appropriate remedy in this case.

**IT IS ORDERED** that Plaintiff's unopposed motion to amend (Doc. 30) is **granted.**

**IT IS ORDERED** the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for an award of benefits based on Plaintiff's application dated July 6, 2010, with a finding of disability beginning June 23, 2010.

Dated this 12th day of January, 2016.

_____
David G. Campbell
United States District Judge